UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TRISTAN BROUSSARD                      CIVIL ACTION

VERSUS                                 NO: 15-1161
                                       c/w 15-2500

FIRST TOWER LOAN, LLC                  SECTION: "J"(1)

## ORDER & REASONS

Before the Court is a *Motion to Compel Arbitration, Appoint Arbitrator and to Stay Proceedings* **(Rec. Doc. 85)** filed by Defendant, First Tower Loan, LLC ("Tower"); an opposition thereto (Rec. Doc. 99) filed by Intervenor, the United States Equal Employment Opportunity Commission ("EEOC"); an opposition (Rec. Doc. 102) filed by Plaintiff, Tristan Broussard ("Broussard"); and Defendant's reply (Rec. Doc. 107). Also before the Court is Defendant's *Motion to Stay EEOC Claims Pending Arbitration* **(Rec. Doc. 96)**, the EEOC's opposition (Rec. Doc. 100), Plaintiff's opposition (Rec. Doc. 103), and Defendant's reply (Rec. Doc. 110). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motions should be **GRANTED** for the reasons set forth more fully below.

## FACTS AND PROCEDURAL BACKGROUND

This litigation derives from Broussard's employment with Tower and subsequent termination. Broussard is a twenty-one-year-old resident of Lake Charles, Louisiana. (Rec. Doc. 1 at 2.) Tower

is a consumer loan company, headquartered in Mississippi, with branches in five states, including Louisiana. *Id.* at 3. Broussard is a transgender man, meaning he outwardly appears to be male and his gender identity is male. *Id.* at 4. However, his birth sex is female. *Id.*

In early February 2013, Broussard applied for a job as a Manager Trainee in Tower's Lake Charles office. *Id.* at 1. Leah Sparks, the manager of Tower's Lake Charles office, interviewed Broussard for the position on February 25, 2013. *Id.* at 4. Later that same day, Sparks called Broussard to offer him the position. *Id.* Broussard accepted the position and began working for Tower on March 4, 2013. *Id.*

When Broussard arrived for his first day of work, Sparks presented him with the paperwork required to be completed by new employees. These materials included Tower's Employment Agreement, which contains the following arbitration provision: "Except for the injunctive relief authorized by the foregoing paragraph,[1] *all other disputes, legal or otherwise, relating to the employment relationship shall be submitted to binding arbitration by the*

---

[1] Paragraph 4 of the Employment Agreement permits Tower to seek injunctive relief in the Chancery Court of Rankin County, Mississippi: "Upon actual or threatened breach of this Agreement, Tower shall be entitled to a temporary restraining order, preliminary injunction, and permanent injunction restraining and prohibiting any conduct prohibited by this Agreement. . . . The parties agree that the Chancery Court of Rankin County, Mississippi, shall have personal jurisdiction over the parties for enforcement of this agreement . . . . The parties further agree that the venue for purposes of obtaining an injunction is Rankin County Chancery Court, such venue is mandatory, and to the exclusion of all other venues in Mississippi or elsewhere." (Rec. Doc. 85-2, at 4.)

*parties*." (Rec. Doc. 85-2, at 4) (emphasis added). The Employment Agreement also states, "Signature by the employee on this contract constitutes an offer of employment by the employer, which offer is not accepted, and neither an employment relationship nor contract is formed or consummated until Tower signs this contract at its corporate headquarters in Rankin County, Mississippi." *Id.* Broussard signed the Employment Agreement in Sparks's presence on March 4, 2013. *Id.*

In addition, the paperwork included a separate document extending an offer of employment to Broussard "(Acceptance Form")", which Sparks signed on behalf of Tower. *Id.* at 3. The Acceptance Form states, "We are pleased to make you an offer of employment. . . . Please indicate your acceptance of our offer by signing your name at the bottom of this page." *Id.* Further, it provides that "[t]he terms of your employment offer are governed by the terms outlined in the employment agreement you will sign." *Id.* Broussard signed the Acceptance Form in Sparks's presence on March 4, 2013. *Id.* Sparks then forwarded Broussard's paperwork to Tower's headquarters in Mississippi. *Id.* at 2. Tower received Broussard's Employment Agreement and other new-hire materials at its headquarters on March 7, 2013, and stamped them as "received" with that date. (Rec. Doc. 85-3, at 2.)

Tower also required Broussard to provide a valid form of identification. (Rec. Doc. 1, at 5.) Broussard provided his

3

driver's license. *Id.* As Broussard completed the paperwork for his employment with Tower, Sparks noticed that his driver's license listed his sex as female. *Id.* at 5. When Sparks asked Broussard about the listed sex, he explained that he is a transgender man. *Id.*

On March 11, 2013, Tower Loan Vice President David Morgan visited the Lake Charles office. *Id.* at 6. Morgan gave Broussard a copy of the company's dress code for female employees and informed Broussard that the company would require him to dress as female. *Id.* Morgan also presented Broussard with a written statement and told him that he must sign the statement in order to continue working at Tower. *Id.* at 7. The statement expressed that Broussard's "preference to act and dress as male" was not "in compliance with Tower Loan's personnel policies." *Id.* Further, the statement indicated that when an overnight room is required for out-of-town meetings, Broussard would be assigned to a room with a female. *Id.* Broussard refused to sign the statement, and his employment terminated.[2] *Id.*

After Broussard's new-hire paperwork arrived at Tower's headquarters on March 7, 2013, it was processed in the regular course of business. (Rec. Doc. 85-3, at 2.) The Employment

---

[2] The parties dispute whether Tower affirmatively terminated Broussard's employment or Broussard resigned. However, this dispute is immaterial. Whether Broussard was fired, quit, or was constructively discharged has no bearing on the motions presently before the Court.

Agreement and other forms were reviewed by administrative staff for completeness and were thereafter presented to J. Lynne Card, Tower's Vice President and Director of Human Resources, for her signature on behalf of Tower. *Id.* Card reviewed Broussard's file and signed the Employment Agreement no later than March 26, 2013.[3]

Broussard filed a charge of discrimination with the EEOC on August 27, 2013. (Rec. Doc. 1, at 8.) The EEOC determined that Broussard's claim was meritorious and issued a Notice of Right to Sue on January 20, 2015. *Id.* at 8-9. Broussard filed the instant action on April 13, 2015, asserting claims against Tower for discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* (Rec. Doc. 1, at 9.) In response, on April 23, 2015, Tower filed suit against Broussard in the Chancery Court of Rankin County, Mississippi, seeking to compel Broussard to arbitrate the claims asserted in his action against Tower. (No. 15-2500, Rec. Doc. 1.) On May 26, 2015, Broussard removed Tower's suit to the United States District Court for the Southern District of

---

[3] Card determined that she signed the Employment Agreement no later than March 26 based on the data reflected in Tower's electronic business record. (Rec. Doc. 85-3, at 3.) Specifically, Tower's payroll data system reflects that Broussard's employment was entered as "Approved," and a date notation for this data filed indicates that the form was last updated on March 26, 2013. Id. However, based on the regular flow of new-hire paperwork in the office, and given that March 26 was a Tuesday, Card believes that she signed Broussard's Employment Agreement on either Monday, March 25, or Friday, March 22. Id. The exact date that Card signed the agreement is immaterial. Whether Card signed agreement on March 22, March 25, or March 26 has no bearing on the motions presently before the Court.

Mississippi. *Id.* Upon Broussard's motion, on July 7, 2015, the Southern District of Mississippi transferred Tower's suit to this Court, where it was consolidated with Broussard's case. (No. 15-2500, Rec. Doc. 18.) Thereafter, on September 8, 2015, the EEOC filed a motion to intervene, which the Court granted. (Rec. Doc. 70.)

Tower filed the instant *Motion to Compel Arbitration, Appoint Arbitrator and to Stay Proceedings* **(Rec. Doc. 85)** on November 5, 2015, and *Motion to Stay EEOC Claims Pending Arbitration* **(Rec. Doc. 96)** on November 16, 2015. The EEOC and Broussard filed their oppositions on November 24, 2015. With leave granted from the Court, Tower filed a reply in support of its motion to compel arbitration on December 2, 2015, and a reply in support of its motion to stay on December 3, 2015. The motions are before the Court on the briefs, without oral argument.

## PARTIES' ARGUMENTS

**A.   Motion to Compel Arbitration**

Tower contends that all of the Title VII claims asserted in Broussard's complaint are subject to and within the scope of a mandatory arbitration agreement between Broussard and Tower. First, Tower argues that a valid arbitration agreement exists within the Employment Agreement signed by both parties. (Rec. Doc. 85-1, at 5-6.) As Tower points out, the Agreement makes clear that Broussard's signature on the document constituted an "offer of

6

employment by the employee." *Id.* at 7. Because the Agreement did not contain an expiration date, Tower claims it was a revocable offer. *Id.* at 8. Tower maintains that it accepted the offer in a reasonable amount of time, and therefore the agreement to arbitrate became effective when Card signed the Agreement on its behalf. *Id.*

Next, Tower argues that Broussard's termination does not constitute a revocation or rejection of the offer. *Id.* at 8-9. According to Tower, termination of employment merely signifies an end to the employment relationship that is governed by the terms of the Employment Agreement. *Id.* at 8. Moreover, Tower claims that termination of Broussard's employment is irrelevant. *Id.* at 10. Because the Agreement plainly covers disputes regarding allegation of wrongful discharge, which cannot be alleged where an employee is still employed, Tower insists that the Agreement clearly contemplates that the arbitration provision will survive potential termination. *Id.* at 11.

Tower further submits that Broussard would be bound to the arbitration provision even if Tower had never signed the Agreement. *Id.* at 9. Tower claims that "under Louisiana law, where one party drafts and presents a contract and the other party signs it, the contract is valid and binding upon the signing party, even where the other party fails to sign the contract." *Id.* Additionally, Tower argues that because Broussard accepted the benefits of the

Agreement, the ability to begin employment with Tower, he is bound by all of the terms of the Agreement. *Id.*

In addition, Tower contends that the Acceptance Form, by which Tower offered and Broussard accepted Tower's offer of employment, constitutes a valid agreement to arbitrate, irrespective of the timing of when Tower eventually signed the Employment Agreement. *Id.* at 10. Tower asserts that the Acceptance Form incorporated the terms of the Employment Agreement by reference, including the arbitration provision. *Id.* For this reason, Tower argues Broussard independently agreed to arbitrate all employment disputes based on his signature on the Acceptance Form. *Id.*

Next, Tower asserts that Broussard's claims fall within the scope of the arbitration provision, which requires that any employment-related disputes be subject to arbitration. *Id.* at 16. According to Tower, the "any dispute" language in an arbitration clause is permissible and, as is the case here, can encompass Title VII claims in the context of an employment dispute. *Id.* at 17. Moreover, because the arbitration clause is broad, Tower argues that any dispute regarding whether Broussard's claims fall within the scope of the arbitration clause should be resolved by the arbitrator. *Id.*

Lastly, because Tower's efforts to reach agreement with Broussard's counsel on an arbitrator have been unsuccessful, Tower requests that the Court appoint the American Arbitration

8

Association ("AAA") to conduct the arbitration pursuant to its protocol for resolution of employment disputes. Tower explains that the AAA has a process by which the parties can select a well-qualified employment law arbitrator from among a panel randomly proposed by the AAA. *Id.* at 20.

Broussard presents several arguments in opposition to Tower's motion. (Rec. Doc. 102.) First, Broussard argues that Tower rejected his "offer of employment" on March 11, 2013, when it fired him. *Id.* at 1. Broussard maintains that Tower could not later revive that offer by signing the Employment Agreement. *Id.* at 2. Second, because Tower fired him, Broussard claims no consideration to create a binding agreement existed when Tower signed the Employment Agreement. *Id.* Third, Broussard argues that the express terms of the Agreement, which provide that no "employment relationship" existed unless and until Tower signed the Agreement, preclude arbitration of any events that occurred prior to March 22, 2013. *Id.* Fourth, Broussard asserts that Tower's insistence that he agree to present himself as a female at work constituted a counteroffer to the Employment Agreement, which he promptly rejected. *Id.* Fifth, Broussard contends that Tower waived any present right to force arbitration because of its "aggressive litigation" of this case. *Id.* In addition, Broussard insists that the Acceptance Form does not create a binding contract to arbitrate. *Id.* at 16. If the Acceptance Form incorporates the terms

of the Employment Agreement, Broussard argues it would necessarily incorporate the term specifying that the proposed employment agreement constituted an offer of employment by Broussard that was not accepted until signed by Tower's representative at its corporate headquarters. *Id.* at 16-17.

Similar to Broussard, the EEOC presents several arguments in opposition to Tower's motion. (Rec. Doc. 99.) As an initial matter, the EEOC claims that the Court must treat Tower's motion to compel as a motion for summary judgment, thereby construing all ambiguities in the facts in the light most favorable to Broussard and the EEOC. *Id.* at 2 nn.3-4. Many of the EEOC's arguments concerning the formation of an arbitration agreement are analogous to Broussard's arguments discussed above; however, the EEOC raises two additional arguments. First, the EEOC contends that even if there had been a contract, Tower has not established that Broussard knowingly and voluntarily waived his right to a trial by jury. *Id.* at 11-16. Although the Fifth Circuit has never expressly decided the issue, the EEOC argues that Tower bears the burden of showing that a voluntary and knowing waiver occurred. *Id.* at 13 & n.11. Second, the EEOC argues that the arbitration provision at issue violates section 707 of Title VII because it purports to foreclose the filing of an EEOC charge. *Id.* at 16-18. For this reason, the EEOC claims the contract would be unenforceable as against public policy. *Id.* at 18.

10

In response, Tower claims that Broussard's arguments have no merit for several reasons. (Rec. Doc. 107.)  First, Tower argues that the EEOC's claim that the motion before the Court is a type of motion for summary judgment is incorrect. *Id.* at 2 n.2. According to Tower, disputes of fact here are not automatically resolved in favor of the nonmoving party, but instead are to be resolved by the Court based on the evidence. *Id.* Second, Tower claims that Broussard offers no evidence that it rejected the Employment Agreement. *Id.* at 3. To contrary, Tower repeats that it is undisputed that it signed the Employment Agreement. *Id.* Furthermore, Tower maintains that termination of Broussard's employment is not inconsistent with and does not constitute a rejection of the Employment Agreement as to that period of employment that had already taken place as of the date it was signed by Tower. *Id.* Similarly, Tower claims that there is no evidence that Broussard withdrew his offer before it was accepted by Tower and nothing in the Agreement imposed a deadline for Tower to sign it. *Id.*

Further, Tower contests the argument that the memorandum presented to Broussard concerning the dress code and lodging issues was a counteroffer. *Id.* at 4. According to Tower, the memorandum "did not seek to start a new employment relationship, but instead clarified the terms and conditions of *continued* at-will employment which Broussard declined." *Id.* Next, Tower explains that Louisiana

11

law does not require "consideration," but instead looks to whether there is a lawful "cause" to support the existence of the contract. *Id.* at 5. Tower maintains that proceeding with an employment relationship was indisputably a lawful cause sufficient to support a valid employment-related agreement. *Id.* Further, Tower notes that Broussard did in fact commence employment with the company as contemplated, such that this cause was not illusory. *Id.*

Tower also contends that Broussard fails to avoid the binding effects of the Acceptance Form, a separate agreement that was executed by the parties prior to the start of Broussard's employment with the company. *Id.* at 5. Moreover, Tower responds that Broussard's argument that incorporation of the arbitration provision by reference into the Acceptance Form included the requirement that the Employment Agreement be signed by Tower ignores the fact that the Agreement was in fact signed by Tower. *Id.*

Next, Tower asserts that the Fifth Circuit has expressly rejected the EEOC's argument that requiring a plaintiff to submit claims to arbitration violates the plaintiff's Seventh Amendment right to a trial by jury. *Id.* at 9. According to Tower, Broussard voluntarily agreed to submit claims against Tower to arbitration by signing the Employment Agreement containing the valid arbitration provision and, by doing so, he relinquished his right to demand that his claims be heard by a jury. *Id.* In response to

12

the EEOC's argument that the Agreement is void under Title VII because it did not expressly reserve Broussard's right to file an EEOC charge, Tower argues that the EEOC fails to cite any authority for this assertion. *Id.* at 10. Moreover, Tower insists that it never attempted such a waiver in the Employment Agreement, Acceptance Form, or otherwise. *Id.* To the contrary, Tower points out it is undisputed that an EEOC charge was filed on Broussard's behalf and fully processed by the EEOC. *Id.*

Lastly, Tower rejects Broussard's argument that it waived the right to compel arbitration. *Id.* at 6. According to Tower, there is a presumption against waiver of arbitration and Broussard bears the heavy burden of proving that Tower waiver its right. *Id.* Furthermore, Tower claims it asserted its right to arbitration in its Answer to the Complaint and has at all times expressed to counsel for Broussard and the EEOC that it considered Broussard's claims to be subject to arbitration. *Id.* at 7. Additionally, Tower points out that the purpose of the state court action in Mississippi was solely to compel Broussard to arbitrate the claims he seeks to assert in this action. *Id.*

**B.  Motion to Stay Pending Arbitration**

In its second motion, Tower moves the Court to stay the claims asserted by the EEOC in this case pending the final outcome of the anticipated arbitration of Broussard's claims. (Rec. Doc. 96-1, at 1-2.) First, Tower contends that section 3 of the Federal

Arbitration Act mandates a stay of the EEOC's action in the present case. *Id.* at 6. Although the EEOC is not a signatory to an arbitration agreement with Tower, Tower argues that "exceptional circumstances" exist to support a mandatory stay. *Id.* at 7. According to Tower, the claims asserted by the EEOC are identical to the claims subject to arbitration asserted by Broussard. *Id.* Because the issues to be litigated by the EEOC are identical to the issues that will likely be arbitrated in Broussard's case, Tower claims "allowing the litigation to proceed would harm the parties' rights to arbitrate." *Id.*

Further, Tower identifies three factors present in the instant case that warrant a stay of the EEOC's claims. *Id.* First, Tower maintains that the EEOC's claims and the underlying facts supporting their claims are identical to Broussard's claims. *Id.* at 7-8. Second, Tower argues that Broussard's claims are inherently inseparable from the claims of the EEOC. *Id.* at 8. Third, Tower asserts that litigation of the EEOC's claims will have a "critical impact" on the anticipated arbitration. *Id.* For these reasons, Tower insists that a stay of the litigation is required in this case.

Finally, Tower contends that, even if a stay is not mandatory under the Federal Arbitration Act, the Court has the discretion to stay proceedings between Tower and the EEOC pending the outcome of arbitration of Broussard's claims. *Id.* In deciding whether to

exercise its discretion to stay the case, Tower claims that the Court should consider whether there is an overlap of facts and claims of the litigation and the arbitration and the likely impact of the litigation on arbitration. *Id.* According to Tower, Broussard's anticipated arbitration necessarily overlaps with the litigation of the EEOC's claims because the EEOC seeks to recovery identical, victim-specific relief on behalf of Broussard. *Id.* at 9. As a result, Tower claims the discovery that may take place in the arbitration is likely to be the same or similar discovery that will take place in the litigation of the EEOC's claims. *Id.* Moreover, Tower contends that the resolution of Broussard's victim-specific claims by an arbitrator will serve as res judicata barring the EEOC from seeking the same individual, victim specific relief in a subsequent proceeding. *Id.* at 10. Consequently, Tower argues that the only claims left for the EEOC to pursue would be claims for general injunctive relief, which can only be decided by the Court rather than a jury. *Id.* at 11. In sum, Tower maintains that the Court should exercise its discretion and grant a stay as a mean of controlling and managing its docket.

The EEOC opposes Tower's motion for three reasons.[4] (Rec. Doc. 100, at 2-3.) First, the EEOC claims that a stay would thwart its authority to enforce Title VII in the public's interest. *Id.*

---

[4] Broussard presents arguments in opposition to Tower's motion to stay that are substantially similar to the EEOC's and do not warrant separate discussion. (<u>See</u> Rec. Doc. 103.)

Although the EEOC seeks to enforce Title VII by intervening rather than by bringing a direct action, it insists that it acts "to vindicate the public interest in preventing employment discrimination." *Id.* The EEOC maintains that staying the litigation of its claims would severely hamper its public interest role in this litigation. *Id.* at 10. Second, the EEOC contends that the Federal Arbitration Act provides no authority to stay its claims because it is not a party to the purported arbitration agreement. *Id.* at 3. Third, the EEOC argues that the Court's discretionary power to control and manage its docket is better served by moving forward with litigation of the EEOC's claims because the Court can directly manage the litigation. *Id.* Furthermore, contrary to Tower's argument, the EEOC contends that an arbitrator's decision will not have any preclusive effect on the EEOC; therefore, the EEOC argues it would be free to pursue its claims regardless of the outcome of arbitration. *Id.* at 16.

In reply to the EEOC's and Broussard's opposition, Tower maintains that if the Court compels Broussard to arbitrate his claims and does not stay the EEOC's claims pending such arbitration, then Tower "will simultaneously be defending two separate proceedings in two separate forums involving identical allegations. It is very likely that the same discovery, depositions, and motions will take place in both forums, increasing case expenses, disruptions and inconvenience, and the likelihood

16

of inconsistent rulings." (Rec. Doc. 110, at 7.) Further, Tower clarifies that it does not claim that the EEOC's public interests claims will be barred by res judicata; rather, it argues that the EEOC's ability to seek individual relief for Broussard will be barred by the anticipated arbitration. *Id.* Otherwise, Tower insists that Broussard would get "two bites at the apple—one before the arbitrator and another by the EEOC on his behalf in this litigation." *Id.* at 8.

## LEGAL STANDARD

The Fifth Circuit has observed that "[i]n enacting the Federal Arbitration Act, Congress declared a national policy in favor of arbitration." *Snap-on Tools Corp. v. Mason*, 18 F.3d 1261, 1263 (5th Cir. 1994) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)). Section 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, provides, in relevant part, "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2. Congress has therefore mandated the enforcement of arbitration agreements.

Considered to be "the primary substantive provision of the Act," Section 2 reflects "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone*

17

*Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). In effect, Section 2 creates "a body of federal substantive law of arbitrability." *Id.* "[C]ongress' clear intent, in the Arbitration Act, [was] to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Snap-on Tools Corp.*, 18 F.3d at 1263 (alterations in original) (quoting *Moses H. Cone Mem. Hosp.*, 460 U.S. at 22). Thus, there is a strong presumption in favor of arbitration.

The FAA requires district courts to "compel arbitration of otherwise arbitrable claims, when a motion to compel arbitration is made." *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1147 n.20 (5th Cir. 1985). Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under the agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. This provision is mandatory and demands a stay of the proceedings, at the request of a party, if the dispute is arbitrable and referred to arbitration. *Tittle v. Enron Corp.*, 463 F.3d 410, 417 n.6 (5th Cir. 2006).

Courts employ a two-step analysis to determine whether a party may be compelled to arbitrate. *Jones v. Halliburton Co.*, 583 F.3d 228, 233 (5th Cir. 2009); *Wash. Mut. Fin. Grp. v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004); *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996). The Court first inquires whether the party has agreed to arbitrate the dispute at issue. *Jones*, 583 F.3d at 233-34. This question itself is further subdivided into two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Webb*, 89 F.3d at 257-58. To determine whether the parties formed a valid agreement to arbitrate, the Court applies ordinary principles of state contract law. *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537-38 (5th Cir. 2003); *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 531 (5th Cir. 2000). "[T]he federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Am. Heritage Life Ins. Co.*, 321 F.3d at 538. In analyzing arbitrability, courts apply federal substantive law. *Grigson*, 210 F.3d at 531. Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25. If

the Court finds that there is a valid agreement to arbitrate between the parties and that the dispute in question falls within the scope of the arbitration agreement, the second step is to determine whether any federal statute or policy renders the claims nonarbitrable. *Wash. Mut. Fin. Grp.*, 364 F.3d at 263.

## DISCUSSION

### A.   Motion to Compel Arbitration

The Court must first apply ordinary principles of state contract law to determine whether there is a valid agreement to arbitrate between Broussard and Tower. Under Louisiana law,[5] "[a] contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code art. 1906. Four elements are required for a valid contract: (1) capacity to contract; (2) mutual consent; (3) a lawful cause; (4) and an object that is lawful, possible, and determined or determinable. *Granger v. Christus Health Cent. La.*, 144 So. 3d 736, 760-61 (La. 2013); *see also* La. Civ. Code arts. 1918, 1927, 1966 1971. The party claiming the existence of a contract has the burden of proving that the contract was perfected. La. Civ. Code art. 1831.

---

[5] The Employment Agreement at issue contains a choice-of-law provision that provides, in pertinent part, "The interpretation and application of this contract (as well as choice of law principles) . . . is governed by Mississippi law." (Rec. Doc. 85-2, at 4.) Yet, none of the parties briefed the Court on the choice-of-law issue, and the parties' memoranda apply Louisiana law. Consequently, the Court applies Louisiana law to determine whether Broussard and Tower formed a valid agreement to arbitrate. However, the Court's conclusion would be the same under Mississippi law.

The element critical to the issue before the Court is the element of mutual consent. Article 1927 of the Louisiana Civil Code explains that "[a] contract is formed by the consent of the parties established through offer and acceptance." *Id.* art. 1927. Unless the law requires a certain formality for a type of contract, offer and acceptance may be made orally, in writing, or by action or inaction that clearly indicates consent. *Id.* However, in the absence of a legal requirement, when the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form. *Id.* art. 1947. In addition, an acceptance not in accordance with the terms of the offer is not an acceptance at all, but rather a counteroffer which must be accepted in order to become a binding contract. *Id.* art. 1943. Thus, to constitute a contract, an offer must be accepted as made.

An offer to make a contract is good, generally speaking, until revoked by the offeror or rejected by the offeree. An offer that neither specifies a period of time for acceptance nor manifests an intent to give the offeree a delay within which to accept is a revocable offer, which may be revoked before it is accepted. *Id.* arts. 1928, 1930. Furthermore, a revocable offer expires if not accepted within a reasonable time. *Id.* art 1931. A purported acceptance made after the expiration of the initial offer

constitutes a new counteroffer, which must be accepted in order to form a binding contract.

In the instant case, Tower argues that both the Employment Agreement and the Acceptance Form, which incorporates the terms of the Employment Agreement, constitute valid contracts to arbitrate employment-related disputes. The Court first considers whether the Acceptance Form constitutes a binding contract with a valid arbitration agreement.

The Acceptance Form is a written contract between Broussard and Tower. The Acceptance Form clearly states that it is an "offer of employment" from Tower for Broussard to accept. (Rec. Doc. 85-2, at 3.) Before beginning work at Tower, Broussard signed the Acceptance Form below the statement, "I accept this offer of employment." *Id.* The Acceptance Form provides that the terms of the offer "are governed by the terms outlined in the employment agreement you will sign." *Id.* "As a general rule of contract law, separate documents may be incorporated into a contract by attachment or reference thereto." *Arthur J. Gallagher & Co. v. Babcock*, 703 F.3d 284, 289 (5th Cir. 2012); *AWC, Inc. v. CSF Const., Inc.*, 931 So. 2d 382, 386 (La. App. 4 Cir. 2006). Further, the Louisiana Second, Third, Fourth, and Fifth Circuit Courts of Appeal have held: "The incorporation of an arbitration clause by reference to another written contract is a suitable method of evidencing the parties' intent to arbitrate as long as the

22

arbitration clause in the contract that is referred to has 'a reasonably clear and ascertainable meaning.'" *Aeneas Williams Imports, L.L.C. v. Carter*, 131 So. 3d 894, 896 (La. App. 2 Cir. 2012); *accord Woodson Const. Co. v. R.L. Abshire Const. Co.*, 459 So. 2d 566, 569 (La. App. 3 Cir. 1984); *Regions Bank v. Weber*, 53 So. 3d 1284, 1290 (La. App. 4 Cir. 2010); *Russellville Steel Co. v. A & R Excavating, Inc.*, 624 So. 2d 11, 13 (La. App. 5 Cir. 1993). Therefore, it is accepted practice to incorporate by reference an arbitration provision not shown on the face of the document.

It is undisputed that the Employment Agreement contained an arbitration provision. Moreover, the arbitration clause in the Employment Agreement is clear. As mentioned above, the arbitration provision provides that "all . . . disputes, legal or otherwise, relating to the employment relationship shall be submitted to binding arbitration by the parties." (Rec. Doc. 85-2, at 4.) Further, the arbitration provision contains a nonexhaustive list of arbitrable issues, including wrongful discharge. *Id.* Broussard's argument that the Acceptance Form necessarily incorporates the provision of the Agreement stating that the Broussard's signature on the Agreement is an offer of employment which must be accepted by Tower is untenable. To reach that conclusion, the Court would be required to disregard the express language in the Acceptance Form, which clarifies that Broussard

may accept Tower's offer of employment. While the Acceptance Form mentions the Employment Agreement and contemplates Broussard signing it, the Acceptance Form indicates that Broussard may accept the offer and form an employment relationship immediately: "The terms of your employment offer are governed by the terms outlined in the employment agreement you will sign. *However, if you are ready to be a member of the Tower Loan team . . ., just sign below indicating . . . your acceptance of our offer.*" *Id.* (emphasis added). Broussard signed both the Employment Agreement and the Acceptance Form. *Id.* at 3-4. Thus, there is a valid arbitration agreement.

Broussard's argument that the agreement lacks consideration is misplaced. As an initial matter, the common law concept of consideration is not relevant to a contractual analysis in Louisiana. *See* La. Civ. Code art. 1967 cmt. (c) ("Under this Article, 'cause' is not 'consideration.'"); *Unkel v. Unkel*, 699 So. 2d 472, 475 (La. App. 2 Cir. 1997) ("*Consideration,* in the common-law sense, is not a prerequisite for a valid contract in Louisiana, and is distinguished from *cause*."). Instead of consideration, under Louisiana law, a contract requires a lawful cause and object. Cause is the reason a party obligates himself, not the terms of the obligation. *See* La. Civ. Code art. 1967. The objects of a contract are the specific actions the parties must undertake to comply with the contract. *See id.* art. 1971. Here,

Broussard signed the Acceptance Form as a condition of employment. "Employment [is a] valid cause of [a] contract." *Cellular One, Inc. v. Boyd*, 653 So. 2d 30, 34 (La. App. 1 Cir. 1995). Moreover, such an agreement is supported by valid consideration. *See Hadnot v. Bay, Ltd.*, 344 F.3d 474, 477 (5th Cir. 2003) (holding offer of at-will employment was adequate consideration to support arbitration agreement and was not illusory "because any eventual arbitration will, of necessity, relate to conduct that occurred during the term of employment"); *New S. Fed. Sav. Bank v. Anding*, 414 F. Supp. 2d 636, 643 (S.D. Miss. 2005) ("Under Mississippi law, any mutual promises, such as mutual promises to arbitrate certain claims, constitute consideration."). Accordingly, the Acceptance Form signed by Broussard contains a consensual agreement to arbitrate which is binding and valid under Louisiana law and therefore Broussard is bound to that agreement and the dictates of the Federal Arbitration Act.

Having determined that Broussard and Tower formed a valid arbitration agreement, the Court must now consider whether the dispute in question falls within the scope of the arbitration provision. When determining whether a dispute is covered by the scope of an arbitration agreement, the Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. The Fifth Circuit has likewise stated that doubts concerning

25

the scope of an arbitration agreement should be resolved in favor of arbitration. *Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 294 (5th Cir. 2005). Moreover, the Fifth Circuit has repeatedly emphasized the strong federal policy in favor of arbitration. Thus, "arbitration should not be denied 'unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Id.* (alteration in original) (quoting *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002)).

In addition, the Fifth Circuit distinguishes between broad and narrow arbitration clauses. "If the clause is broad, the action should be stayed and the arbitrators permitted to decide whether the dispute falls within the clause." *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993). On the other hand, if the clause is narrow, the matter should not be referred to arbitration or the action stayed, unless the court determines that the dispute falls within the clause. *Id.* at 755. Arbitration clauses containing the "all dispute" language, such as the one presently before the Court, are of the broad type. *See id.*

Here, the dispute at issue falls squarely within the scope of the arbitration agreement. The arbitration provision applies to all disputes "relating to the employment relationship," and includes claims based on "sexual" matters and claims for "wrongful termination." Further, the arbitration clause is broad. The

26

arbitration clause makes it clear that the "scope of arbitration" is to be decided by the arbitrator. Accordingly, the Court is required to grant a stay under 9 U.S.C. § 3 and permit the arbitrator to decide whether Broussard's claims fall within the scope of the arbitration clause.

Having found that there is a valid arbitration agreement between the parties and that the dispute in question falls within the scope of the arbitration provision, the second step is to determine whether any federal statute or policy renders the claims nonarbitrable. Although the EEOC's opposition does not mention the Acceptance Form, it argues that a contract compelling arbitration would be unenforceable in this case. First, the EEOC argues that Tower has not established a knowing and voluntary waiver of the right to a trial by jury. However, the valid agreement to arbitrate is itself a knowing and voluntary waiver of the right to a jury trial. As the Fifth Circuit has noted, "The Seventh Amendment does not confer the right to a trial, but only the right to have a jury hear the case once it is determined that the litigation should proceed before a court. If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes." *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702 (5th Cir. 2002) (quoting *Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 957 F. Supp. 1460, 1471 (N.D. Ill. 1997)). In short, "[t]he Seventh Amendment right to a trial by jury is limited by a

valid arbitration provision that waives the right to resolve a dispute through litigation in a judicial forum." *Id.; see also Garza Nunez v. Weeks Marine, Inc.*, No. 06-3777, 2007 WL 496855, at *7 n.14 (E.D. La. Feb. 13, 2007) ("If he indeed entered into an arbitration agreement, the Plaintiff would be deemed to have waived his right to a jury trial.").

The EEOC also argues that the arbitration provision at issue is unenforceable under Title VII because it purports to foreclose the filing of an EEOC charge. "A waiver of the right to file a charge is void as against public policy." *EEOC v. Cosmair, Inc., L'Oreal Hair Care Div.*, 821 F.2d 1085, 1090 (5th Cir. 1987). However, an unenforceable provision of an arbitration clause will not render the entire arbitration provision void. *See Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 (5th Cir. 2003) (severing unenforceable provision in arbitration clause barring any award of punitive damages and upholding remainder of arbitration clause that authorized arbitration of any and all disputes arising out of employment relationship); *Cosmair, Inc.*, 821 F.2d at 1091 ("[C]ourt may enforce remainder of agreement unenforceable in part as against public policy when 'performance as to which the agreement is unenforceable is not an essential part of the agreed exchange.'"). Here, there is no evidence that Tower attempted to prohibit Broussard from filing an EEOC charge in the Acceptance Form, Employment Agreement, or otherwise. In fact, it is undisputed

that an EEOC charge was filed on Broussard's behalf and fully processed by the EEOC. (Rec. Doc. 1, at 8-9.) Accordingly, the Court rejects the EEOC's arguments.

Lastly, Broussard argues that Tower waived its right to compel arbitration because of its "aggressive litigation" in this matter. The right to arbitration, like any contractual right, may be waived. *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1158 (5th Cir. 1986). The party seeking to prove a waiver of arbitration bears a heavy burden: "Waiver of arbitration is not a favored finding, and there is a presumption against it." *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 496 (5th Cir. 1986). "A party waives its right to arbitration only when participation in the litigation has been so substantial that compelling arbitration would prejudice the other party." *Cargill Ferrous Int'l v. SEA PHOENIX MV*, 325 F.3d 695, 700 (5th Cir. 2003). For example, in *Price v. Drexel Burnham Lambert, Inc.*, the court held that the party moving for arbitration had waived that right because it had "initiated extensive discovery, answered twice, filed motions to dismiss and for summary judgment, filed and obtained two extensions of pre-trial deadlines, all without demanding arbitration." 791 F.2d at 1159-62. On the other hand, where the party seeking arbitration asserts the right to demand arbitration in answer to a complaint, "the burden of proving waiver falls even more heavily on the shoulders of the party seeking to prove

waiver." *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420 (5th Cir. 1985).

In the instant case, Broussard fails to meet the heavy burden of proving waiver. Broussard claims that Tower substantially invoked the judicial process by filing its own countersuit in Mississippi; however, Broussard fails to mention that Tower filed suit in Mississippi solely to compel arbitration. Tower filed its lawsuit according to the specific provision in the Employment Agreement that authorizes Tower to file suit seeking injunctive relief in the Chancery Court of Rankin County, Mississippi. Tower filed its suit to compel arbitration within ten days of Broussard filing suit in this Court. For this reason, Tower's filing of its lawsuit against Broussard in Mississippi strongly supports the conclusion that Tower did not waive its rights to compel arbitration. Moreover, Tower has repeatedly expressed that it considers Broussard's claims to be subject to binding arbitration. For example, as its first defense in its Answer, Tower stated that Broussard's claims are subject to arbitration and should be dismissed or stayed. (Rec. Doc. 46, at 1.) Therefore, Broussard had notice that Tower planned to compel arbitration and has not shown that compelling arbitration would prejudice him.

Tower further requests that the Court appoint the AAA to conduct the arbitration in accordance with its protocol for resolution of employment disputes. Under the FAA, courts may

intervene into the arbitral process to select an arbitrator upon application of a party, if the arbitration agreement does not provide a method for selecting arbitrators. *BP Expl. Libya Ltd. v. ExxonMobil Libya Ltd.*, 689 F.3d 481, 490-91 (5th Cir. 2012). Section 5 dictates that when an agreement to arbitrate does not provide a method for appointment of an arbitrator, "upon the application of either party to the controversy *the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require*, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein." 9 U.S.C. § 5 (emphasis added). Neither Broussard nor the EEOC have objected to the Court appointing the AAA to conduct the arbitration. Accordingly, unless Broussard and Tower reach an agreement on an arbitrator,[6] the Court directs that the arbitration proceed before the AAA, with the parties to select an arbitrator pursuant to the provisions of the AAA's Employment Dispute Resolution Rules.

---

[6] Tower notes, "During earlier discussions between Tower Loan's Mississippi counsel and certain of Plaintiff's attorneys the parties reached what appeared to be a tentative agreement for submitting Broussard's claims to arbitration before one of two Mississippi employment attorneys, J. William Manuel (Bradley Arrant) or Peyton S. Irby, Jr. (Kullman Firm) (both located in Jackson Mississippi)." (Rec. Doc. 85-1, at 19 n.19.) However, Broussard's counsel have since declined to take a position regarding whether these attorneys are agreeable arbitrators. Id. Tower states that it would be agreeable to conducting the arbitration before either of these attorneys pursuant to the AAA protocols for resolution of employment disputes. Id.

**B.    Motion to Stay Pending Arbitration**

Under section 3 of the FAA, a district court must stay a lawsuit when a party demonstrates that any issue involved in the lawsuit is "referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. This provision is mandatory and demands a stay of legal proceedings "whenever the issues in a case are within the reach of an arbitration agreement." *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d at 754. When these circumstances are present, a district court "has no discretion under section 3 to deny the stay." *Id.*

The first issue the Court must address in determining whether the mandatory stay provision applies is whether Tower, the defendant in this matter and a signatory to the arbitration agreement, may invoke the provision against the EEOC, the intervenor, who is a nonsignatory to the arbitration agreement.

Historically, invocation of the mandatory stay provision was limited to signatories of the arbitration agreement and was not effective against any nonsignatory parties present in the lawsuit. *Adams v. Ga. Gulf Corp.*, 237 F.3d 538, 540 (5th Cir. 2001) ("Generally, this section applies only to parties to the arbitration agreement."). However, in recent years, courts have expanded the applicability of the mandatory stay provision. For example, in *Adams v. Georgia Gulf Corp.*, the Fifth Circuit summarized two cases where the court "applied the stay provision

to non-parties because the issues presented in the nonparty-party litigation if litigated would have rendered the arbitration redundant and thwarted the federal policy favoring arbitration." *Id.* at 540-41 (citing *Harvey v. Joyce*, 199 F.3d 790 (5th Cir.2000); *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324 (5th Cir.1999)). Because the court was confronted with "exceptional circumstances," it diverged from the general rule requiring party status for the mandatory stay provision to apply. *Id.* at 541. Similarly, in *Waste Management, Inc. v. Residuous Industriales Multiquim, S.A. de C.V.*, the Fifth Circuit held that a nonsignatory to an arbitration agreement could invoke the mandatory stay provision. 372 F.3d 339, 342 (5th Cir. 2004). The court found that the signatory's claims in the litigation were so closely related to the arbitration and would have such an impact on the arbitration as to make a stay mandatory under section 3. *Id.* at 345.

In *Waste Management*, the Fifth Circuit articulated three factors that courts must consider in determining whether the mandatory stay provision applies: "1) the arbitrated and litigated disputes must involve the same operative facts; 2) the claims asserted in the arbitration and litigation must be 'inherently inseparable'; and 3) the litigation must have a 'critical impact' on the arbitration." *Id.* at 343. "The question is not ultimately one of weighing potential harm to the interests of the non-signatory, but of determining whether proceeding with litigation

will destroy the signatories' right to a meaningful arbitration." *Id.* (citing *Adams*, 237 F.3d at 541).

When a mandatory stay under section 3 is not warranted, the court may nonetheless exercise its discretion to stay the litigation pending the outcome of the arbitration, even as to claims between nonarbitrating parties, simply as a means of controlling its docket. *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d at 755 (citing *Moses H. Cone*, 460 U.S. at 20 n.23; *Matter of Talbott Big Foot, Inc.*, 887 F.2d 611, 614 (5th Cir. 1989)). The court's discretionary authority to issue a stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 243 (5th Cir. 2009) (citing *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.*, 761 F.2d 198, 204 n.6 (5th Cir. 1985)). Determining whether to issue a discretionary stay "calls for the exercise of judgment, which must weigh competing interests and maintain and even balance." *Landis*, 299 U.S. at 255.

Considering the three *Waste Management* factors, the Court finds that a discretionary, if not a mandatory, stay is warranted. First, the EEOC's claims and Broussard's claims undoubtedly involve the same operative facts. Notably, in its Notice of Intent to Intervene, the EEOC stated, "The nexus of factual circumstances

central to the EEOC's claims will be those at issue in Mr. Broussard's suit against First Tower Loan, LLC." (Rec. Doc. 51, at 1.) Moreover, the EEOC's complaint and Broussard's complaint allege the same operative facts. (*Compare* Rec. Doc. 1, at 3-7, *with* Rec. Doc. 71, at 4-8.) "The close relationship between the facts involved in the federal court claims and the arbitration claims counsels in favor of staying this litigation." *Suzlon Infrastructure, Ltd. v. Pulk*, No. H-09-2206, 2010 WL 3540951, at *8 (S.D. Tex. Sept. 10, 2010).

Second, although the subject matter of the EEOC's claims and Broussard's claims are similar, they are not "inherently inseparable." When the EEOC chooses to bring an enforcement action in a particular case, or chooses to intervene in an aggrieved employee's action as it did here, "the agency may be seeking to vindicate a public interest, not simply provide make-whole relief for the employee." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 296 (2002). Here, some of the EEOC's claims are brought to vindicate a public interest and, therefore, are not inherently inseparable from Broussard's personal claims. However, the facts and claims "significantly overlap." *Suzlon*, 2010 WL 3540951, at *8. Indeed, litigating the EEOC's claims will involve much of the same evidence developed in the arbitration.

Finally, the litigation would likely have a "critical impact" on the arbitration. Several of the EEOC's claims seek victim-

35

specific relief "to make Mr. Broussard whole," such as backpay, reinstatement, and damages. Broussard seeks the same relief. Consequently, resolving these claims of the EEOC would resolve issues that the arbitrator will decide. Given the binding effect of a federal judgment, as well as the factual similarities in the EEOC's claims, the arbitrator would necessarily be strongly influenced to follow the Court's determination. *See Waste Mgmt.*, 372 F.3d at 345. Thus, "[a]llowing the instant litigation to proceed would risk inconsistent results, and 'substantially impact' the arbitration." *Id.*

A discretionary stay of this litigation will also enable the Court and the parties to benefit from the outcome of the arbitration. For example, Tower argues that if Broussard's claims for victim-specific relief are resolved by the arbitrator, then the only claims left for the EEOC to pursue would be claims for general injunctive relief, which must be decided by the Court rather than a jury. The EEOC vigorously opposes this argument, relying on the Supreme Court's holding in *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002). In *Waffle House*, the Supreme Court held that an agreement between an employer and an employee to arbitrate employment-related disputes does not bar the EEOC from pursuing victim-specific judicial relief, such as backpay, reinstatement, and damages, in an enforcement action. *Id.* at 287-88. However, in *Waffle House*, the EEOC filed an enforcement action and the employee

was not a party to the case. *Id.* at 283. Moreover, the employee had not sought arbitration of his claim. *Id.* at 297. Therefore, the Court did not consider what effect, if any, arbitration of the employee's claim would have on the EEOC's claims. *Id.* In this regard, the Court stated:

> It is an open question whether a settlement or arbitration judgment would affect the validity of the EEOC's claim or the character of relief the EEOC may seek. The only issue before this Court is whether the fact that [the employee] has signed a mandatory arbitration agreement limits the remedies available to the EEOC.

*Id.* Further, the Court noted that it "goes without saying that the courts can and should preclude double recovery by an individual" and "ordinary principles of res judicata, mootness, or mitigation may apply to EEOC claims." *Id.* at 297-98.

In the instant case, Tower does not dispute that the EEOC may seek victim-specific relief in an enforcement action, even if a valid arbitration agreement exists between the employer and employee. Thus, the EEOC's reliance on *Waffle House* is misplaced. Instead, Tower asserts that the principles of res judicata may apply to the EEOC's claims and, therefore, an arbitration judgment could affect the validity of the EEOC's claims or the character of relief the EEOC may seek. The Fifth Circuit supports Tower's assertion. In *EEOC v. Jefferson Dental Clinics, PA*, the Fifth Circuit held that the EEOC was barred from seeking make-whole relief for employees who had already litigated their claims in

state court. 478 F.3d 690, 699 (5th Cir. 2007) (applying Texas law).[7] The court's holding was based on the res judicata effect of the prior state court judgment in the employees' case. *Id.* The court reasoned that "[i]n the context of make-whole relief, . . . the interests of the EEOC stack up poorly against the principles of res judicata." Similarly, the court explained that "[t]he EEOC's public interest does not justify giving the plaintiffs two chances to receive make-whole relief." *Id.* (citing *Waffle House*, 534 U.S. at 296-97.) However, "given the divergence of interests between the charging parties and the EEOC when it seeks injunctive relief," the court allowed the EEOC's injunctive relief claims to proceed. *Id.* at 698. Thus, in this case, the EEOC's ability to seek make-whole relief on behalf of Broussard may be limited by the arbitration.

Lastly, the EEOC relies on *Harris v. Amoco Production Co.*, 768 F.2d 669 (1985), to support its argument that a stay would thwart its authority to enforce Title VII in the public's interest.

---

[7] The EEOC argues that Tower's reliance on EEOC v. Jefferson Dental Clinics, PA is improper because it is inconsistent with the Supreme Court's decision in Taylor v. Sturgell, 553 U.S. 880 (2008), and because it applied Texas law rather than federal law. However, the EEOC does not point to any inconsistencies between Jefferson Dental and Taylor, and courts have cited Jefferson Dental with approval since Taylor. See Jackson v. Deutsche Bank Trust Co., 583 F. App'x 417, 418 (5th Cir. 2014). Further, although Jefferson Dental applied Texas law rather than federal law, there is nothing to indicate that federal law would require a different conclusion. Compare Jefferson Dental, 478 F.3d at 695-99 (analyzing the representation-of-interests inquiry under Texas law), with Taylor, 553 U.S. at 894-900 (discussing the representation-of-interests inquiry under federal law). Nevertheless, the issue of res judicata is not presently before the Court and the Court need not decide whether any of the EEOC's claims would be barred by res judicata at this time.

In *Harris*, the Fifth Circuit reversed the district court's dismissal of the EEOC's claims when the original plaintiffs settled. *Id.* at 682. Reasoning "from the premise that the EEOC exists to represent the public interest in equal employment opportunity," the court held that the EEOC, which had intervened in the case, had the authority to continue litigating after the main plaintiffs had settled out of the lawsuit. *Id.* Here, although Tower opposed the EEOC's initial motion to intervene, Tower does not dispute that Title VII grants the EEOC the statutory right to intervene under certain circumstances. Nor does Tower seek to dismiss the EEOC's claims at this time. Rather, Tower seeks a stay of the EEOC's claims pending the final outcome of the arbitration between Broussard and Tower. Accordingly, the EEOC's reliance on *Harris* is misplaced.

Considering the factors set out in *Waste Management*, the Court concludes that a stay in this matter is warranted. The operative facts are identical, the claims significantly overlap, and allowing the litigation to proceed would risk inconsistent results and substantially impact the arbitration. Moreover, the Court and the parties may benefit from the outcome of the arbitration. In sum, even if these factors do not require a mandatory stay under section 3, those factors, on the present record, support a discretionary stay.

<u>CONCLUSION</u>

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motion to Compel Arbitration, Appoint Arbitrator and to Stay Proceedings* **(Rec. Doc. 85)** is **GRANTED**.

**IT IS FURTHER ORDERED** that the Court appoints the American Arbitration Association as the arbitral forum to administer arbitration of the dispute between Broussard and Tower.

**IT IS FURTHER ORDERED** that Defendant's *Motion to Stay EEOC Claims Pending Arbitration* **(Rec. Doc. 96)** is **GRANTED**.

**IT IS FURTHER ORDERED** that all proceedings in this matter shall be **STAYED** pending the outcome of the arbitration between Broussard and Tower. The Clerk of Court shall mark this action closed for statistical purposes.

**IT IS FURTHER ORDERED** that the Court shall retain jurisdiction and that the case shall be restored to the trial docket upon motion of a party if circumstances change, so that it may proceed to final disposition. This order shall not prejudice the rights of the parties to this litigation.

New Orleans, Louisiana, this 9th day of December, 2015.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

40